CHANCERY.                    Hanley *vs* Wallace, &c.

APPEAL FROM THE JESSAMINE CIRCUIT.

Case 57.          *Attachments. Injunction Bonds. Damages.*

October 19.      JUDGE MARSHALL delivered the opinion of the Court.

The case stated.   IN January, 1822, Hanley filed his bill in the Mercer Circuit, and attached certain slaves, the property of William Lewis, for the purpose of ultimately subjecting them to the payment of one half of several replevy bonds remaining in the Jessamine Circuit Court, then due, in which Lewis and Hanley were co-securities of James Clark, the principal, who was alledged to be insolvent. It was also alledged, as the ground of the proceeding, that Lewis was fraudulently removing himself and his property out of the State, to avoid paying his portion of said bonds, and that if he succeeded, the payment of the entire debt would devolve upon the complainant, without any means or prospect of reimbursement. In April, 1822, a judgment was confessed by Lewis, in the Jessamine Circuit Court, in favor of one Wm. Wallace, for about $139 in damages, and a judgment was also confessed by D. T. Walker as attorney in fact for Lewis, in favor of Wallace, for $318, with interest from the 16th of the same month. On each of these judgments, an execution, (*fi. fa.*) issued to the Sheriff of Mercer county, on the 20th of April, 1822. And each was returned by him as having been levied on the slaves attached by Hanley. On each of these returns two successive writs of *venditioni exponas* were issued to the Sheriff of Mercer, the last in April, 1823, and the return on each stated that the slaves were not sold in consequence of the pendency of the attachment. In July, 1823, Hanley filed his bill in the Jessamine Circuit Court, against the two plaintiffs, Walker and Wallace, and others, in which, after stating the grounds of his attachment, and giving a succinct history of the facts and proceedings above noticed, he charges that the two judgments were fraudulently confessed, when nothing, or not so much as confessed was due,

and that the executions thereon were sent to Mercer and levied upon the attached slaves for the purpose of defeating his attachment, and of appropriating the slaves or their proceeds, or a portion of them, to the benefit of Lewis; and alledging that there was no other property of Lewis known to him, whereby to satisfy his half of the debt, for which they were co-sureties, one half of which he says he had paid; he prayed that the Sheriff of Mercer and all others might be restrained from proceeding further on the executions in favor of Walker and Wallace, until the further order of the Court, and for general relief. Upon this bill an order was made by the Judge of the Jessamine Circuit Court, for an injunction to be issued according to the prayer of the bill, upon the complainant's executing bond with James Wilmore as his security, in the penalty of $1000, conditioned as the law directs. On the 26th day of July, 1823, Hanley and Wilmore executed, in the Clerk's office of the Jessamine Circuit Court, an injunction bond in the penalty prescribed by the Judge's order, the condition of which, after reciting the order for injunction as injoining and restraining the Sheriff of Mercer, and Walker and Wallace, and all others from further proceedings on two executions, one in favor of Walker and the other in favor of Wallace, which issued from the Jessamine Circuit Court against Wm. Lewis, until the further order of the Court, provides that if Hanley and Wilmore, or either of them, shall well and truly *pay the debts aforesaid* and also all costs and condemnations of the Court which may accrue and be awarded by reason of the foregoing injunction, then the above obligation to be void, else to be in full force.

In May, 1829, the injunction of Hanley was perpetuated, as to all further proceedings against the slaves. But this decree was reversed by this Court at the October term, 1830, and the cause remanded with directions to dismiss the bill without prejudice, (4 *J. J. Marshall*, 622;) which having been done, Wallace, as surviving obligee, brought an action of debt upon the injunction bond, and obtained judgment against Hanley and Wilmore for $791 50 cents, presumed to be the aggregate

HANLEY
vs
WALLACE &c.

The object of this
suit.

amount of Wallace's judgment with interest, and of Walker's judgment without interest, and of the costs of both.

To be relieved against this judgment, which was affirmed by this Court at the April term, 1840, Hanley filed the present bill against Wallace and Wilmore, in which, besides reciting the facts and proceedings above noticed, and exhibiting as parts of the bill the various records referred to, (and which are copied into this record,) he alledges in substance that the attached slaves were appropriated to the payment of Lewis' half of the replevy bond, for the security of which they had been attached; that the injunction against Wallace and Walker restrained them only from proceeding further against said slaves, which being at the time in the custody of the law, they could not rightfully seize and sell; that they were, therefore, not in fact injured by said injunction, and could not be; that the injunction bond was prepared by the Clerk and executed by Hanley and his security, without, as he believes, reading it or hearing it read, in the faith that it had been correctly prepared, and purported to bind them no further than, according to law and the Judge's order, they should have been bound, in obtaining such an injunction; that there was no other consideration for the execution of said bond, but such as the law would imply from the circumstances and attitude of the parties, and that the stipulation in the condition of said bond, binding them to pay the said debts, was not according to law or the order of the Judge, but was inserted by mistake and was without consideration, and that as to that the bond was executed in mistake or ignorance—and on these grounds he prays for a perpetual injunction and for general relief. The answer denies or calls for proof of most of the facts alledged in the bill, and denies all its arguments and conclusions. It does not admit that the attached slaves were appropriated to the payment of the replevy bonds under any decree in the attachment suit, and denies that said suit is yet disposed of. It alledges that the slaves were sold by the complainant or under his authority, and converted to his own use, and that they were sold, or should have been sold, for more than Lewis' portion of the replevy bonds. It denies that the bond

was executed without knowing its contents or by mistake, or without consideration; avers that it is in proper form, and at any rate in the form in which the complainant and his security had a right to execute it, and in which they did execute it; and alledges that but for the execution of the bond, the defendant and Walker could have made their debt long since out of the estate of Lewis, in Kentucky or in Arkansas, which, by reason of the delay occasioned by the injunction, could not, after its dissolution, be done; and it denies that the injunction restricted them only from proceeding against the slaves.

That Hanley and Lewis were co-securities in replevy bonds to a large amount for Clark, who was insolvent, and that Lewis was disposing of his real estate in Kentucky and removing his slaves and personal property from the State, and was about removing himself, when Hanley, shortly before the replevy bonds became due, filed his bill in the Mercer Circuit Court, and had the slaves, then on their way to Arkansas, seized and detained by attachment, are facts which may be assumed upon this record. And on these facts we are of opinion that the Circuit Court of Mercer, as a Court of Equity, had jurisdiction to attach the slaves, of value sufficient for the purpose, if necessary, of finally paying Lewis' half of the replevy bonds, or of indemnifying Hanley, should he make that payment. There is no evidence that a greater number of slaves were detained than was reasonably sufficient to answer the purposes of the attachment. As it does not appear that the attachment was ever discharged, and as the injunction of Hanley against Walker and Wallace was dissolved without prejudice, Hanley is entitled to the benefit of the foregoing facts and conclusions in this suit. The slaves then, having been rightfully attached by a competent jurisdiction, were in the custody of the law for the benefit of Hanley. If Walker and Wallace, coming in with judgments and executions posterior to the attachment, had been permitted to sell all or any of them under their executions, the slaves thus sold would have remained still subject to the decree which might be rendered in the attachment suit—and so far as they might have been necessary for the satisfaction of such decree,

if not produced according to its requirements, Walker and Wallace would have been bound to make good their value, either to the purchaser under the executions or to the party entitled under the decree. Whether, therefore, a sale of the slaves under their executions, would have been advantageous to them to any extent, would have depended upon the question whether there would have been any excess in the value of the slaves attached, beyond the amount of the debt to which they were liable to be subjected in the attachment suit, and all the costs of that proceeding. It is only this excess that could properly be subject to any other claim or lien than the attachment itself. And as the value of the excess could not regularly be ascertained, or reasonably estimated, except in the attachment suit, or by its result, this condition of the property is a sufficient reason why it ought not to be subject to sale by any process foreign to the attachment suit, and why the Court entertaining that suit, should and would prevent or control any such sale. And on this ground it has been decided, at the present term, that even a Court of Law should quash an execution sale of property attached in Chancery, before the delivery of the execution: (*Oldham* vs *Scrivner*.)

As Walker and Wallace had no right to proceed to sell the slaves under their execution, while the attachment remained in full force upon them all, and as they might in fact have been made answerable for a contempt if they had persisted in doing so, it follows that an injunction which would have restrained them from proceeding to sell until the further order of the Mercer Circuit Court, would only have restrained them from a breach of their own duty, and a violation of the attachment, and could, even in case there had been no equity to support the attachment, and it had been finally discharged, have caused them no injury, save that of mere delay and their costs of suit, unless the property in the mean time had perished or been lost or wasted. And if the attachment had finally prevailed, whether it took all the property or not, they would not have sustained any damage of which they could have complained either in law or in equity, unless deprived of the excess, to which alone they were

An injunction bond given by a stranger to the judgment, injoining the sale of a particular article of property, whatever may be its condition, operates in equity only as a security to the obligee for any injury that may accrue, not for the amount of the debt.

entitled. There would have been an obvious propriety in applying for such an injunction in the Mercer Circuit Court, and in the very suit in which the attachment was pending, as in that case Walker and Wallace would not only have been at liberty, but would have had it in their power, to take immediate advantage of any order of that Court which might have freed the slaves, or any of them, from the attachment; and would, moreover, have had the opportunity, as parties to the suit, of securing their right of coming in next after the attachment, and of urging such orders of the Court, and such a disposition of the attached property as might have been most advantageous. And because the Jessamine Circuit Court had no jurisdiction over the attached property, and because as parties to a suit in that Court, Walker and Wallace could not have had the opportunities above noticed, there was an impropriety, and may have been an inconvenience and disadvantage to them in filing the bill and obtaining the injunction in that Court, and to be removed only by its order. The inconvenience would have consisted in the necessity of waiting the progress, and perhaps becoming parties to two suits instead of one; and the disadvantage would have arisen from the postponement of the operation of their executions during the interval which might elapse between the date of any order of the Mercer Circuit Court, which might leave the slaves or a portion of them free, to be sold under the executions, and the time when a corresponding order of the Jessamine Circuit Court might be obtained, dissolving the injunction, in whole or in part, in which interval the property freed from the attachment might possibly have been lost to them. But no possible loss or injury could have accrued from this latter circumstance, unless the attached property was more than sufficient to answer the just objects of the attachment. To the extent that the sale of the property was necessary for. Hanley's indemnity, (and *prima facie*, the sale of all that was attached was necessary,) Walker and Wallace could, in legal contemplation, have sustained no damage from being prohibited and prevented from selling the attached slaves. Whether they, as plaintiffs in the executions, could be subjected to any

damage by such a prohibition, depended, therefore, upon the questions: 1st, Whether there was any ground for the attachment; and, 2d, Whether there was any excess in the value of the attached property beyond what was reasonably necessary for the just purposes of the attachment ; and whether any damage has actually accrued to them in consequence of the injunction, depends upon the question whether, by reason of the injunction obtained in the Jessamine Circuit Court, the plaintiffs in the executions have been prevented from appropriating any such excess to the satisfaction of their debts, whereby any portion of them may have been lost ? Neither of the two last questions can be satisfactorily answered or decided upon this record, because it does not appear what has become of the attachment, nor what has been done with the attached slaves, nor what was their value; whether there was, at the date of the injunction, other property of Lewis' out of which the debts might have been made. But it is sufficient for our present purpose to ascertain to what damage, in a legal sense, the plaintiffs in the executions might have been subjected by the injunction. And as, upon examination of the bill and its prayer and the Judges order for an injunction, we are satisfied that there was no injunction restraining all proceedings upon the judgments, but that further proceedings upon the two executions which had been levied on the attached slaves, were alone injoined, so that in effect the plaintiffs were injoined only from proceeding against the slaves, it follows that the utmost damage to which they could have been subjected by the injunction, would have been the possible deprivation of the excess of the property attached beyond the exigencies of the attachment. And as this excess might have been less than the amount of the executions injoined, with the legal costs, &c. incident to the injunction, and might in fact have been nothing, it follows that the amount of the executions and costs did not furnish the proper measure of the damages which might be sustained by the injunction—and as the excess in the value of the property might have greatly exceeded the amount of the executions, such excess in value was also an improper measure of the damages.

To what indemnity then were the plaintiffs in the execution entitled, or with what indemnity does the law furnish them as the condition upon which they may, by such an injunction as this, be subjected to possible loss? In the absence of a positive rule applicable to the case, we answer that as a sufficient security against all damage which might accrue by the improper awarding of the injunction, furnishes a complete indemnity, there is no reason in law or equity for requiring more. And as the damage to which the parties injoined may be subjected, constitutes the sole consideration and proper measure of the indemnity, the bond required as the condition of granting the injunction, should not go further than to secure to the party injoined this indemnity, with costs, and such damages as the law may annex for the delay. All beyond this is without reason or motive in point of fact, and without consideration in point of law. And an injunction bond stipulating for more than a just indemnity should, in equity, be held as a security for such indemnity only. If for instance, A having a judgment for $10,000 against B, should levy upon a small piece of property claimed by C, and C should go into equity to restrain him from proceeding against that property, it would be unreasonable to require that, as a condition of obtaining the restraining order, he should undertake to pay the entire debt in case of failure to sustain the injunction. And if such a condition should be imposed by the Judge who grants the injunction, and the party in obedience to his requisition should execute bond accordingly, the enforcement, according to its letter, of so unreasonable and disproportioned an undertaking would be unconscientious and inequitable; and although it could not be prevented at law would be restrained in equity; where the judgment upon the bond would be held as a security only for what might be justly due, that is, for the damages actually sustained, and those given by law. For a Judge, in granting an injunction to which the applicant is entitled, on the face of his bill, has no right to impose conditions which are unjust and unreasonable, and should he do so, and the party, in order to obtain his injunction, should comply with the conditions imposed, such com-

HANLEY
*vs*
WALLACE &c.

If it be an injunction to restrain the sale of property in the custody of the court by attachment, and the property be not more than sufficient to pay the debt for which it is attached, and is thus appropriated, no injury accrues to the obligee.

pliance cannot be placed upon the footing of a contract free-ly and understandingly made, upon negotiaton and con-sideration between the parties, but to the extent that the conditions were unreasonable and unjust, the act being required under color of legal authority, and in the course of a judicial proceeding, as the condition of exercising a right, would be regarded in equity, as unobligatory, so far as it was not, in fact, authorized by law. And the same principle applies to any excess in the bond prepar-ed by the ministerial officer entrusted with the superin-tendence of its execution, and who preparing the bond, as it may be presumed, in conformity with his under-standing of the law and the Judge's order, requires its execution as the condition of issuing the injunction which has been awarded. The whole bond stands upon the re-quisitions of the Judge, as authorized by law, and not upon the idea of voluntary compact. And there is in such case no consideration for it beyond that of affording an indemnity against the injurious consequences of an injunction, which may turn out not to be sustainable in equity.

Upon consideration of the stature of 1796, *Stat. Law*, 809, on the subject of injunctions, and which prescribes the condition of the bond, we are of opinion that it does not apply to an injunction restraining a plaintiff at law from proceeding with his execution against particular property, and leaving him free to pursue his judgment in all other modes. Such an injunction does not stay all proceedings in the suit at law, and is not properly char-acterized as an "injunction to stay proceedings" in the suit at law, when it stays only one particular mode of proceeding therein. We feel authorized to construe the statute strictly, in order to avoid apparent injustice, and especially as the strict construction does not impair the efficacy of the statute towards the attainment of, all of its presumable objects. We have no doubt therefore, that the principles just stated, are applicable to this case, and that the Court may, and should regard the bond and the judgment on it, as a mere security for that indemnity to which the obligees may appear to be justly entitled. Nor have we any doubt as to the power of a Court of

Equity to grant the appropriate relief, either on the ground of a partial want of consideration, for the direct stipulation to pay the debts, or on the ground of correcting a mistake which must have existed somewhere, and the consequences of which should not fall upon the party who has executed a bond prepared by the officer of the law in the course of his duty, and having no other foundation than the requirements of the law to which it was supposed and intended to conform.

Whether the bond was read or heard by the parties who executed it, is immaterial. This was no case of voluntary engagement, and there was no consideration for going beyond the requirements of the law. The bond must be taken to have been executed according to the requirement of the clerk, and so far as it exceeds the requirements of the law, the excess must be attributed to his mistake and ignorance—of which mistake and ignorance, as well as the necessity of maintaining the power of relieving against their consequences, this bond furnishes a signal argument, not merely in its binding the obligois to pay the amount of the executions, without regard to the damage which might actually accrue from the improper awarding of the injunction, but also in the fact, that it binds them to make the payment unconditionally. And although the injunction might have been properly awarded, and might have been finally perpetuated, surely a Court of Equity would have had power to relieve against a judgment which might have been obtained during the pendency of the injunction; and it has equal power to relieve against the present judgment, by preventing its execution, except so far as damage may have been sustained by the injunction.

It has been already said, that the utmost possible damage which Wallace and Walker could have sustained in consequence of the injunction, must be limited by the extent to which, by the injunction, they were prevented from reaching the excess of the value of the attached property, beyond the just objects of the attachment, and appropriating it to their debts. It has also been intimated, that as the injunction was dissolved without prejudice, the decree of dissolution did not conclude Hanley's equi-

ty, nor prevent him from relying on it afterwards, and in this suit; and we are of opinion that he may rely upon any matter which would tend to show that the damage sustained by reason of the injunction, was less than either the amount of the executions injoined, or the excess in the value of the attached property already referred to. Of the several conditions by which the damage might be thus rendered, we proceed to notice the following, which indeed embrace all that are brought to the mind of the Court, by their view of the probable facts of this case.

If property be not ultimately subjected, the extent of the injury is the delay.

1. If at the date of the dissolution of the injunction, the attachment was still pending, and the slaves were actually held under it, then as the attachment appears to have been rightful, and therefore of itself prevented Walker and Wallace from legally proceeding against the slaves independently of the injunction, and as the property, and their rights in regard to it, remained in the same condition at the dissolution as it was at the granting of the injunction, it is clear that they did not in a legal sense, sustain any damage whatever from the pendency of the injunction.

If the execution debtor had other property out of which the creditor might have made his debt, he has sustained no damage; if enough to satisfy only a part, then only to the extent of the remainder, if not necessary to pay the attachment debt.

2. As the injunction restrained them only from proceeding against the attached slaves, and did not prevent them from abandoning their executions which had been levied upon them, and pursuing other property for the coercion of their judgments, it seems to us that to the extent that, during the pendency of the injunction, they might conveniently have made the amount of their judgments by other executions against other property, so far they suffered no damage from the injunction, and can claim none upon the bond. And it is clear, that if by execution or otherwise, they have made or secured the whole or any part of their judgments, they can claim damages on the bond only in respect of the residue.

An obligor in an injunction bond, not the debtor in the judgment, injoins the sale of property levied on, may in equity contest the validity of the judgment.

3. We are also of opinion, that if the judgments or either of them were fraudulently confessed for demands wholly or in part merely fictitious, or if on other grounds either of the judgments were void, and therefore not legally enforcible by execution, to that extent no damage can be regarded as having been sustained by the injunction, and none is recoverable on the bond. And as by the act of

1796, (*Stat. Law*, 412,) all powers of attorney for confessing judgment before suit brought, are declared absolutely null and void, we are of opinion that the judgment confessed for Wm. Lewis by David T. Walker, as his attorney in fact, if as in this record appears to have been the case, it was confessed before any suit was brought against Lewis for the demand, must be deemed null and void. And therefore, that to the extent of that judgment no damages were recoverable on the injunction bond; and that the bond and the judgment recovered thereon should be held as a security against such damage only as might have accrued by reason of the injunction, to the holder of Walker's judgment, considering it as bearing interest from the date of the injunction bond.

4. If at the time when Hanley's injunction was dissolved, the attached slaves were not still held under the attachment, but had been disposed of under the order of the Court in that suit or otherwise, towards satisfying the objects of the attachment, or for either purposes, and the equity on which the attachment was founded has not been negatived by decree of the same Court; then if the reasonable value of the slaves exceeded the amount necessary for the objects of the attachment; and if by reason of the injunction, or of any improper disposition of the slaves, occasioned by the act or fault of Hanley, Wallace and Walker, or either of them, were prevented from appropriating that excess to the satisfaction of a fair and valid judgment, which could not have been otherwise coerced by execution, by the use of reasonable diligence, and which was not then and is not yet satisfied, the extent to which they or either of them have been thus prevented from obtaining satisfaction of a valid judgment or judgments, is the measure of the damages sustained by reason of the injunction, and for which the bond and the judgment on it should be held as a security. The present injunction should be retained until these damages are ascertained, either by the verdict of a jury on a proper issue or issues submitted to them, or upon such pleadings and process as will enable the Chancellor to ascertain them according to the principles of this opinion. It is sufficient to prevent an affirmance of the judgment, that

it appears from the record as now existing, that the damages sustained are less than the amount of the judgment injoined: first, by reason of the apparent voidness of the judgment in favor of Wallace against Lewis, confessed by attorney; and second, by reason of the presumption against an excessive levy under the attachment, and the want of proof of any excess in the value of the attached property, or of any improper disposition thereof. We cannot now direct a final decree, because the personal representative of Wm. Walker, the plaintiff in one of the judgments, is a necessary party to the litigation of the question as to the damages sustained by the injunction, as far as it operated on that judgment, and because the facts on which the extent of damages depends, do not appear to have been fully litigated. With regard to parties, it may be observed, that although it is alledged in the bill, and admitted in the answer, that Walker assigned the benefit of his judgment to Wallace, the representative of Walker is not bound by this admission; and besides, as such an assignment, if made, did not pass the legal title, the assignor or his representatives are necessary parties in equity to a contest involving the right to enforce the judgment.

Wherefore, the decree is reversed, and the cause remanded, that the complainant may have leave to bring the representative of William Walker before the Court, and for further proceedings consistent with this opinion.

*Hewitt* for appellant: *Owsley & Goodloe* for appellees.